UNITED STATES of America

v.

Jay Louis GIBSON.

Crim. No. 87–311 SSH.

United States District Court,
District of Columbia.

July 24, 1990.

Sharon A. Sprague, Asst. U.S. Atty., Washington, D.C., for plaintiff.

William H. Jeffress, Jr., Washington, D.C., for defendant.

MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

The Court writes as briefly as is feasible in light of (1) the imminence of the scheduled trial and (2) the complexity of the infinite variety of relevant search and seizure precedents.

There is, of course, no question but that defendant was transporting more than 200 grams of cocaine hydrochloride. The investigatory police work which led to his apprehension on June 23, 1987, was fully permissible—indeed commendable—up to the point at which defendant refused to consent to the search of his bags and asked if he was free to leave. Then–Special Agent (now Captain) Sauve responded that he was, but that his bags had to remain and that a search warrant would be sought.[1] It has been conceded that there then was no probable cause to justify obtaining a search warrant. Putting aside the somewhat esoteric question of whether defendant himself effectively was seized at that time, the Government acknowledges that the bags were seized.

The Court need not concern itself with what might have been done differently by the officers; it must limit itself to a consideration of what actually happened. After the bags were seized, it is true that defendant consented to a sniff of them by Max 25. When the dog alerted on defendant's tote bag, probable cause came into existence for the first time. Assuming arguendo that the validity of the positive alert by the dog could survive the impermissibility of the prior seizure of the bags, the agents then gave defendant the options of waiting for a warrant, consenting to a search of the tote bag, or voluntarily showing them the contents of the bag. The Government contends that there was consent to a search of the bag, and that that made evidentiary use of the cocaine permissible. The Court accords full credibility to the testimony of Captain Sauve and DEA Special Agent Wolpert on the widely separated suppression hearing dates of November 6, 1987, and July 2, 1990. Nonetheless, further assuming arguendo that a consent search of the tote bag could survive the earlier impermissible seizure of all three bags, the Court must conclude that consent to a search was not given by defendant. As a result, Captain Sauve's seizure of the tee shirt containing the opaque plastic bag which contained a paper bag which in turn

---

1. In an infinite number of cases in this court system, interdiction officers consistently have testified that if an approached subject declines to talk to the officer or does not consent to a sniff or a search, the subject is free to leave (absent probable cause, of course).

contained the clear plastic bag of cocaine was impermissible.

Considering, as it must, the totality of the circumstances, the Court concludes that while the officers acted commendably up to the point of the seizure of the bags, and acted in good faith at all times, nonetheless the officers violated defendant's rights under the Fourth Amendment. Accordingly, the motion to suppress must be granted.

In reviewing the entire record this past weekend in order to resolve this matter, the Court read for the first time the transcript of the preliminary hearing which was conducted before Magistrate Burnett on June 29, 1987. At that hearing, defendant was represented by Mr. Brunwasser. His conduct and tactics then were virtually identical to those which later led this Court first to revoke permission for him to appear pro hac vice and subsequently to bar him from the courtroom. As early as page 12 of the transcript, the Assistant United States Attorney stated:

So far, this has been the most unprofessional preliminary hearing I have ever participated in, and I've appeared before this Court for many years.

By page 18, the Magistrate observed: "A preliminary hearing normally takes an average of twenty minutes to a half hour and not three or four hours."

By page 49, the AUSA stated:

And I think the behavior of this attorney, from the time he's walked into this Court, has come to the point of being not only contemptuous but I think Your Honor should have him taken out of this particular case and have competent counsel brought in.

Page 64 of the preliminary hearing transcript reflects the following statements made to Mr. Brunwasser by the Magistrate:

Well, I'm going to be very frank with you. I think if you're going to handle this case before a District Court Judge, most District Court Judges are not going to have the patience that I've had.

\* \* \* \* \* \*

Well, if they've read the transcript of these proceedings, they may have some reservations about allowing you to even represent the defendant in this case.

Later, when Mr. Brunwasser suggested that he might file a petition for a writ of habeas corpus, even though defendant was released on an unsecured appearance bond (as in fact he later did), the Magistrate stated (Tr. 69):

All right, if you want to proceed [with] a Fourth Amendment issue after the indictment, you can file a motion to suppress evidence, or you can explore all of these issues to your heart's content, to the extent a District Court Judge will tolerate the means and procedures that you want to use.

Manifestly, if this Court previously had read that transcript, Mr. Brunwasser would not have been permitted to appear pro hac vice at all. Equally manifestly, if Mr. Brunwasser had not pursued so purposefully his tactics of delay and obfuscation, and had the facts been permitted to be developed three years ago, defendant would have been spared what must have been protracted personal anguish as well as presumably large fees and costs, and wholly unwarranted burdens would not have been placed on this Court, the Court of Appeals, and, to a lesser extent, the Supreme Court of the United States.[2]

The Court closes with two observations. First, it expresses its deep appreciation to William H. Jeffress, Jr., and his colleagues whose highly professional efforts permitted this woefully protracted case to be resolved. Second, it expresses the hope that defendant has learned enough from this case never again to transport illegal drugs and never again to become involved in the criminal justice system.

SO ORDERED.

---

**2.** As set forth in prior rulings by this Court, Mr. Brunwasser filed multiple appeals and petitions for writs of mandamus in the Court of Appeals, and filed one petition for a writ of certiorari in the Supreme Court. All, of course, were unsuccessful—except in achieving delay.